WILLIAM D. O'CONNOR, Respondent, v. RICHARD WEBBER, JR., et al., Copartners under the Firm Name of RICHARD WEBBER, Appellants.

Negligence — master and servant — master not liable for injury to servant unless in exercise of reasonable care danger might have been foreseen — when continued use of machine of standard make not negligence — negligence not predicated upon furnishing of utensil of different shape than common unless danger might have been foreseen by reasonable care — trial — motion for judgment on ground that only questions of law are involved not necessarily waiver of right to go to jury on denial of motion — waiver of right to go to jury a question of intent.

1. A master may be held liable for injury to his servant, a boy under sixteen, while operating a machine in the course of his employ-

---

ment, only if by the exercise of reasonable prescience he might have foreseen that the accident might happen, and though machines with a protective device that might have prevented the accident were on the market, where it appears, in an action to recover for the injury, that such machines were not in common use and the evidence fails to allow an inference that the master either knew or in the exercise of proper care should have learned of their existence, the continued use of a machine of standard make did not constitute negligence.

2. Nor may negligence be ascribed because the master furnished a utensil to be used in connection with the machine of a different shape than those generally used unless it appears that he should, in the exercise of reasonable prudence, have foreseen that injury might occur from the use of the particular utensil provided.

3. Where counsel makes a motion for judgment in his favor on the ground that only questions of law are involved, it does not follow as of course that by such motion he intends to waive his right to have the jury pass upon questions of fact in the event of an adverse decision upon his motion. Waiver of the right to go to the jury in such a case rests upon the element of intent.

*O'Connor* v. *Webber*, 209 App. Div. 907, reversed.

(Argued October 21, 1924; decided December 9, 1924.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered July 1, 1924, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*E. C. Sherwood* for appellants. There was no proof of fault or negligence on the part of the defendants; and the trial court erred in denying the defendants' motion to dismiss the complaint. (*Carlson* v. *Phœnix Bridge Co.*, 132 N. Y. 273; *Harley* v. *Buffalo C. M. Co.*, 142 N. Y. 31; *Devlin* v. *Smith*, 89 N. Y. 470; *Bauman* v. *Cowdin*, 75 N. J. L. 193; *Reynolds* v. *Merchants Woolen Co.*, 168 Mass. 501; *O'Connor* v. *Webber*, 219 N. Y. 439; *Toye* v. *United States Dressed Beef Co.*, 141 App. Div. 332; *Harley* v. *B. C. M. Co.*, 142 N. Y. 31; *Burke* v. *Witherbee*, 98 N. Y. 562; *Valentino* v. *Garvin Machine Co.*, 139 App. Div. 139.) An accident on this meat chopper to a person using a stick to push the meat into the chopper was not reasonably to be anticipated, and

therefore, there is no basis for a recovery against the defendants upon any theory. (*O'Connor* v. *Webber*, 219 N. Y. 439; *Basel* v. *Ansonia Clock Co.*, 216 N. Y. 356.)

*Sydney A. Syme* for respondent. From the facts which it was permissible to find, the trier of the facts was justified in imputing negligence to the defendants. (*Stenson* v. *Flick Construction Co.*, 146 App. Div. 66; *Ray* v. *Keene*, 19 App. Div. 147; affd., 160 N. Y. 706; *Karpeles* v. *Heine*, 277 N. Y. 74; *Buffalo Steel Co.* v. *Ætna L. Ins. Co.*, 156 App. Div. 453; 215 N. Y. 638; *Bachman* v. *Little*, 152 App. Div. 811; *Gallenkamp* v. *Garvin Machine Co.*, 91 App. Div. 141; 179 N. Y. 588; *Schmidt* v. *Bruen*, 56 Misc. Rep. 130; *Regling* v. *Lehmeier*, 50 Misc. Rep. 331; *Koester* v. *Rochester Candy Works*, 194 N. Y. 92; *Marino* v. *Lehmeier*, 173 N. Y. 530; *Kenyon* v. *Sanford Manufacturing Co.*, 119 App. Div. 570; *Dragatto* v. *Plunkett*, 113 App. Div. 648; *Sitts* v. *Waiontha*, 94 App. Div. 38.) The accident which here happened was reasonably to be anticipated; indeed, the conditions which caused it were created by the negligent act of the defendants; and the absence of proof of prior accidents is of no consequence. (*Brady* v. *M. R. Co.*, 127 N. Y. 46; *Dye* v. *D., L. & W. R. R. Co.*, 130 N. Y. 671; *Morrow* v. *West. Elec. R. Co.*, 54 App. Div. 592; 172 N. Y. 638; *Dougan* v. *Champlain Trans. Co.*, 56 N. Y. 1; *Bachman* v. *Little*, 152 App. Div. 811; *Walsh* v. *N. Y. C. & H. R. R. R. Co.*, 204 N. Y. 58; *MacPherson* v. *Buick Motor Co.*, 160 App. Div. 55; 217 N. Y. 382; *Shannahan* v. *Empire Eng. Co.*, 204 N. Y. 543; *Evans* v. *Pearson & Sons*, 125 App. Div. 666; 194 N. Y. 569; *Croghan* v. *Hedden*, 147 App. Div. 631.)

LEHMAN, J. The defendants in June, 1913, maintained a meat market in Mount Vernon. They employed the plaintiff, a boy of fourteen, in their business. The only machine in the defendants' place of business was a meat-chopping machine. The plaintiff while engaged in chopping meat in this machine sustained serious injuries.

A recovery for the consequent damages was reversed by this court in 1916. (*O'Connor* v. *Webber*, 219 N. Y. 439.) After various vicissitudes in the courts below the plaintiff has recovered and seeks to sustain a second judgment for his injuries.

The evidence as to the manner in which the accident occurred is concededly substantially the same as at the earlier trial. It has been succinctly summarized as follows: " The meat-chopping machine is run by electricity. At the top there is a hopper or funnel, four inches high, its diameter about four or five inches at the top and two and a half or three inches at the bottom. Beneath it is a revolving worm or screw, covered on all sides and open only at the top of its junction with the hopper. The meat is fed into the hopper and pushed down with a stick. The stick, touching the screw, flew out of the plaintiff's hand; and with the shock his hand slipped into the machine and the revolving screw cut off the fingers."

The undisputed evidence at both trials is that the chopping machine was of standard make and in common use. Apparently a boy operating the machine could be injured only if his hands came in contact with the worm at the bottom of the funnel. The boy here was given a stick to push down the meat in the funnel, so that his hands should not come in contact with this worm. He understood as well as an adult that to touch the worm would be dangerous, and in fact the accident occurred while he was using the stick and through accidental contact with the screw. Quite evidently, therefore, the defendants can be held liable for the plaintiff's injury only if by the exercise of reasonable prescience they might have foreseen that the plaintiff's hand might come in contact with the worm even though the plaintiff used the stick which they provided.

The danger of injury, if the operator of the machine placed his hand against the worm or screw was obvious, but this court pointed out upon the earlier appeal that

there was no reason to believe that any person would touch the screw, for " against casual contact by the thoughtless it was protected by the funnel," and the defendants were not required to employ experts to invent a new machine with a device which might guard against " remote and doubtful dangers." They complied with their full duty when they provided a machine of standard make and in common use. Upon the present appeal the record shows that machines containing such a device had previously been invented, and could be purchased on the market, and it is urged that this new evidence shows that others foresaw and guarded against the danger, and permits the inference that the defendants, by the exercise of reasonable prudence, could likewise have foreseen and guarded against it. In our opinion the evidence falls far short of permitting such an inference. The machines equipped with such a device were not in common use. Machines without such device were the only ones in common use and of standard make. In fact the same condition is true to-day. The possibility that a man might thrust his hand against the worm or screw and that injury would result may have led inventors to seek a device that would remove the possibility, but the obligation of an employer to purchase such a device, even if he knew of its existence, depends upon whether the danger was such that in the exercise of reasonable care it would be foreseen and guarded against, or whether it was " remote and doubtful." In the present case the evidence fails to allow an inference that the defendants either knew or, in the exercise of proper care, should have learned of the existence of these machines, not in common use; and the danger of contact with the screw by any person using a stick to push down the meat in the hopper still remains, in spite of the new evidence, remote and doubtful.

Upon this appeal, as upon the earlier appeal, we find that the continued use of the machine of standard make did not constitute negligence.

The same considerations guided the court on the last appeal to the conclusion that the evidence then presented did not justify a finding that the defendants were negligent in failing to furnish a stick of different shape. The stick furnished was somewhat longer than the hopper and was somewhat narrower at the top, where plaintiff held it, than at the bottom. It is claimed that when the bottom of the stick hit the screw it was thrown up and flew out of the plaintiff's hand; that the plaintiff's hand then slipped down into the hopper and was torn by contact with the screw. The evidence produced at the second trial shows that the maker of the machine used by the defendants furnishes no stick for use in connection with the machine, but that a competing manufacturer furnishes with each machine sold a stick which is longer than the stick provided by the defendants and broader than that stick at the lower end so that it almost fills the bottom of the hopper, and that butchers generally use for this purpose an ordinary potato masher, purchased at a five and ten cent store, or an article of similar shape whittled down to fit the bottom of the hopper with slight play. It is urged that this evidence justifies the inference that the stick provided by the defendants was not of the size and shape in common use and was not fit for its purpose. That the longer sticks used by other butchers permit a firmer grasp and that the operator's hand takes naturally a position which would make it difficult or impossible for the hand to slip into the hopper, and the lesser play of the stick at the bottom of the hopper would prevent the stick from flying out. We will assume that butchers ordinarily use a stick of different shape, and that the accident would not have occurred if the defendants had provided such a stick. The question still remains whether the defendants should in the exercise of reasonable prudence have foreseen that injury might occur from the use of the particular stick provided. Until a few years before the accident it appears that butchers were accus-

tomed to use their hands to push down the meat. The use of a stick for this purpose was intended to remove the danger of the hand coming in contact with the screw. The stick provided by the defendants had been used by the plaintiff for some days without any trouble. It failed in its purpose only when it caught in the screw, flew completely out of plaintiff's hand and out of the hopper and the plaintiff's hand slipped into the hopper in its place. Should a reasonable man have foreseen that a stick which was somewhat shorter and somewhat narrower at the base than the usual stick might result in such an accident? The length and thickness of the stick was sufficient to permit the plaintiff to push the meat down in the hopper without contact with the screw so long as the stick remained in plaintiff's hand, and we think that we should be imposing upon the defendants an obligation far beyond reasonable care if we should hold them culpable for failure to foresee that a stick which was somewhat shorter and narrower at the bottom than the sticks in common use might fly out of the plaintiff's hand. Common utensils like potato mashers frequently assume a traditional shape which has proven convenient or economical. When a utensil is needed for some similar purpose it may assume a similar shape, yet no negligence may be ascribed to one using a utensil of a different shape unless the difference in shape creates a danger which might be foreseen by reasonable care. Here, others have found sticks shaped like potato mashers convenient, perhaps because they could be purchased cheaply; perhaps because the narrow handle coupled with a broader bottom, which permitted their convenient use to press down potatoes permits their equally convenient use to press down meat, but there is no ground for an inference that any dangers to be apprehended in their use dictated their shape. The danger of such a stick, as the defendants furnished the plaintiff, flying completely out of the hopper and out of plaintiff's hand was too remote to permit a

recovery on the ground that defendants should have foreseen or guarded against it.

Since we are of the opinion that the use of the meat-chopping machine and of the stick in connection therewith even by a boy under sixteen created only a remote danger, it is unnecessary to pass upon the plaintiff's contention that a violation of section 183 of the Penal Law would be evidence of negligence. It follows that the judgment should be reversed and the complaint dismissed.

In view of our conclusion that the plaintiff as a matter of law failed to prove any cause of action and that the complaint should have been dismissed upon defendants' motion, we do not pass upon the question of whether because that motion was made and no request thereafter expressed to go to the jury upon questions of fact the court had power to pass upon any questions of fact which might exist, including even the amount of damages sustained. We merely point out that waiver of the right to go to the jury in such a case as this rests on the element of intent. Where counsel in order to protect his client's rights makes a motion for judgment in his favor on the ground that only questions of law are involved, a trial justice should not be too hasty in assuming that by such motion he intends to waive his right to have the jury pass upon questions of fact held to exist in the event of an adverse decision upon his motion. Complaints such as have arisen in this case could easily be avoided if the trial justice ascertains whether the inference of waiver is based solely upon an ancient legal fiction or upon actual intent.

The judgment should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur; POUND, CRANE and ANDREWS, JJ., dissent from dismissal of complaint.

Judgment reversed, etc.