NIAGARA FERRY AND TRANSPORTATION COMPANY, INC., Respondent, *v.* EAGLE STAR AND BRITISH DOMINIONS INSURANCE COMPANY and Others, Appellants. (Eight actions consolidated.)

Fourth Department, May 21, 1930.

*Harry J. Kelly* and *Single & Single* [*Forrest E. Single, Harry J. Kelly* and *Frank H. Gerrodelte* of counsel], for the appellants.

*Stanley & Gidley* [*Ray M. Stanley* of counsel], for the respondent.

THOMPSON, J. The eight defendants issued a joint policy of " time " insurance to plaintiff on the ferryboat *Jamaica* for the period of one year. The policy covered damages sustained by reason of the negligence of the crew, perils of the sea, inland seas and waters, enemies, pirates, rovers, thieves, fires, explosions, collisions, jettisons, barratry, " and all other perils, losses and misfortune that have or shall come to the hurt, detriment or damage of said vessel or any part thereof."

Early in the morning of April 16, 1926, while moored at the dock of the American Radiator Company in the Niagara river, located at the foot of Hertel avenue, in the city of Buffalo, the vessel filled with water and sank. Due, timely and sufficient notice of claim and proofs of loss were furnished by plaintiff to defendants who thereupon disclaimed all liability, and this action followed.

At the trial the plaintiff proceeded on the theory that the cause of the vessel's sinking was the negligence of the engineer in not seeing to it that a seacock previously opened by him, or under his direction, was closed when he left the vessel the night before. Defendants contended that the defective and unseaworthy condition of the vessel was the cause of the catastrophe, and that it was unseaworthy in law as well as fact, having been refused a certificate of inspection by a United States local inspector at New York in 1918 because of failure to make the repairs required on such inspection. To meet this defense plaintiff asserted that, with its dismantling, cutting down and towing up the canal from New York to Buffalo, the boat ceased to be a boat so far as the United States Revised Statutes, providing for boat inspection, were concerned, to which it did not again become subject until the first inspection at Buffalo in 1922. Moreover, that without knowledge of the facts charged by defendants in regard to the New York inspection,

it had in good faith and law submitted the vessel to the proper United States local inspector at Buffalo for inspection, and had not only fulfilled the requirements made on such inspection, but as well those of the inspection at New York.

The case was submitted to the jury by way of specific questions, which it answered, to the effect that the steamer was seaworthy on the day of the issuance of the policy; that plaintiff used due diligence to keep it so during the term of the policy; that there was no connection between the sinking of the ship and unseaworthiness; that the vessel did not sink solely by reason of a marine peril, insured against, but did sink solely by reason of the negligence of the engineer, and that it did not sink because of a combination of marine peril and negligence of the crew. Upon these answers, the court directed the entry of general verdicts in various amounts against each of the defendants. We have examined the facts and we do not find that the verdict of the jury is in any respect against the weight of the evidence.

We are of the opinion that questions of fact arose upon the trial, other than those submitted to the jury, as to *first*, whether or not the dismantled boat when towed up the canal was a vessel, and *second*, if it was a vessel, whether or not the repairs made on it after it reached Buffalo were " more repairs " within the language of section 4455 of the Revised Statutes of the United States, which reads as follows: " The inspectors of one district shall not modify or annul the doings of the inspectors of another district in regard to repairs, unless there is a change in the state of things, demanding more repairs than were thought necessary when the order was made." (See, also, U. S. Code, tit. 46, § 437.)

It appears, however, that the attorneys for the defendants did not hold this view, but were of the opinion that the only question in the case in this respect was one of law. At the close of the whole case defendants moved for the direction of a verdict upon various grounds, among others, that the vessel was unseaworthy as matter of law because it had not been certificated by the New York inspectors, and further on the ground that the repairs ordered at that port had not been made. The court withheld decision on this motion and submitted the aforementioned questions of fact to the jury. Defendants made no request that other questions, or that the case generally, be submitted to the jury. Upon its rendition of the verdict, the parties stipulated that the jury be discharged and that the court might subsequently decide the motion for a direction of a verdict, direct the entry thereof, that the unsuccessful party should have an exception, and that a motion for a new trial upon all of the grounds specified in the Civil Practice Act should be

deemed to have been made and denied. In making the motion for a direction of verdict, counsel, of course, assumed that the *Jamaica* was a vessel and that the repairs were not " more repairs," and by refraining from asking to go to the jury on these specific questions, they waived their rights in this respect and lodged the decision of the questions of fact involved in the motion as well as the law question in the court. Furthermore, counsels' agreement that when the court decided the motion for a directed verdict it might order the entry of general verdicts upon the verdict of the jury as rendered, amounted to a concession by each that any questions of fact remaining in the case should be determined by the court. In such case the matters are not open to the appellant in this court. A request for a direction of a verdict without a subsequent request to go to the jury is a waiver of such right. (*Colligan* v. *Scott*, 58 N. Y. 670, 671; *Thompson* v. *Simpson*, 128 id. 270, 283; *Smith* v. *Weston*, 159 id. 194, 198.)

Where a party moves for a direction of a verdict, he thereby waives his right to go to the jury, and the court in the absence of further action as to him is entitled to pass upon all questions whether of law or fact, and its decision will stand to the same extent as if it were the verdict of a jury. (Civ. Prac. Act, §§ 457-a, 458, 459, 476, 482; *Sweetland* v. *Buell*, 164 N. Y. 541, 548; *McCall* v. *Sun Mutual Ins. Co.*, 66 id. 505, 517; 25 Columbia Law Rev. 771; 2 N. Y. Law Rev. 396–399.)

That defendants did not desire the jury to pass upon questions other than those submitted to it by the court, but chose to rest upon the law questions which they had raised as such and to waive the jury is very clear. The case is not like *O'Connor* v. *Webber* (239 N. Y. 191, 198); *Eastern District Piece Dye Works* v. *Travelers Ins. Co.* (234 id. 441, 448), or *Ruppert* v. *Singhi* (212 App. Div. 630) in each of which the appellate tribunal felt that the trial court had been too hasty in depriving a party of his right to a trial of his case by a jury on the theory that he had waived it. There is no such situation here.

We have examined appellants' various assignments of error, but find none that are sufficient to warrant us in disturbing the judgments.

The judgments and orders appealed from should be affirmed, with costs.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

In each action: Judgment and order affirmed, with costs.